STATE
*vs.*
DAVID GAUDIN, APPLT.

Oxford.   Opinion, March 7, 1956.

*Henry H. Hastings*, for State.

*William E. McCarthy*, for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MURRAY, A. R. J.

FELLOWS, C. J.   This case comes to the Law Court on report, from the Superior Court in Oxford County, with agreed statement of facts. The Law Court to render final

decision in accordance with the "agreed statement and stipulations."

This is the agreed statement as reported under the order of the presiding justice: "This case arose from a complaint and warrant issued from the Rumford Falls Municipal Court dated September 26, 1955, a copy of which is attached hereto and made a part hereof."

"In said Municipal Court respondent plead not guilty, was found guilty and took an appeal to said Superior Court."

"On the afternoon of the twenty-sixth day of September, 1955 two Wardens of the Inland Fish and Game, one of whom was the complainant in this action, came upon the dead carcass of a moose at Byron, Maine. The moose had been shot and the hind quarters removed by someone unknown. The said wardens set up a vigil in the bushes near the moose for the express purposes of attempting to apprehend the person who killed the moose and/or to apprehend anyone else who may take possession of any part of this moose. The carcass of the moose remained in the sight of the wardens from the time they set up the vigil to the time of the offense complained of."

"The respondent came on the carcass about midnight of said day with the intention of taking some of the moose meat. The respondent had with him an axe, lantern and a companion. Neither had a gun."

"The respondent severed about eighty pounds of the forequarter of said moose and dragged and hauled it about fifty feet from the carcass in the direction of his automobile."

"All the activity of the respondent and his companion was observed by the wardens from the time they entered the woods until finally apprehended. When apprehended the respondent made no effort to run, nor to hide the moose meat, but submitted willingly to the wardens."

"The question before this court is whether or not the respondent under the facts stipulated in the above agreed statement at any time had the required possession to warrant a finding of guilty of the offense charged in the said warrant hereto attached."

"If a Jury verdict of guilty would be sustained under this statement of facts and complaint and warrant, then judgment shall be for the State, otherwise for the Respondent."

The statute involved is found in Section 90 of Chapter 37 of the Revised Statutes of Maine, 1954, the pertinent parts of which read as follows:

"No person shall hunt, kill or have in his possession any caribou or moose, or parts thereof, . . . . ."

"Possession of caribou or moose, or parts thereof, without a permit as set out in this section, or after such permit has expired, shall be prima facie evidence of a violation of this section."

The complaint alleged "that David Gaudin of Rumford in said County and State heretofore, to wit, on the 26th day of September in the year of our Lord one thousand nine hundred and fifty-five at Byron in the said County, did then and there have in his possession the left forequarter of a moose, against the peace of the State and contrary to the form of the statute in such case made and provided."

The question presented by the agreed facts, and the order of the presiding justice in reporting the case, clearly appears to depend upon the meaning of the word "possession" as used in the foregoing statute.

The respondent claims in his brief that the wardens had "possession" of the carcass of the moose from the time they found it in the woods, and that the wardens had "exercised that degree of control over it that is required to obtain possession" and that "when the respondent entered the woods,

several hours later, and cut off the forequarter and started dragging it away" the respondent says that the wardens were still "in possession" because "he was doing no more than what the wardens hoped he would do." The respondent claims that "the game wardens had absolute and positive control over the carcass of the moose." The respondent further claims that he was not in "possession" because he had "no more control than what the game wardens cared to impart to him." The respondent further says that under the circumstances "a jury verdict of guilty could not be sustained."

The principal rule that the court follows in the construction of statutes is the intent of the legislature. It is the "cardinal rule," the "pre-eminent rule," the "controlling rule," *State* v. *Koliche,* 143 Me. 283, *Hunter* v. *Totman,* 146 Me. 259, 265. A penal statute is to be construed whenever possible in favor of the rights of a respondent, *State* v. *Wallace,* 102 Me. 232, and a crime cannot be created by inference or implication, *State* v. *Bunker,* 98 Me. 387, which cases are cited in the respondent's brief.

The word "possession" is often ambiguous in its meaning. It is used to describe *actual possession* and also to describe *constructive possession.* Actual and constructive possession are often so blended that it is difficult to see where one ends and the other begins. *National Safe Deposit Co.* v. *Stead,* 232 U. S. 58, 34 Supreme Court 209, 58 L. Ed. 504. Actual possession exists where the thing is in the physical control, or immediate occupancy of the party. Constructive possession is that which exists in contemplation of law without actual personal occupation. Constructive possession often refers to the person lawfully entitled to immediate physical possession and control. In criminal law possession usually means care, management, physical control, or the secret hiding or protection of something forbidden or stolen. See Bouvier's Law Dictionary (3rd Revision) "Possession," 33

Words and Phrases, "Possession," 71-101 and many cases there cited.

Possession is synonymous with occupied, held, or controlled; possession is the fact or condition of having such control of property that a person may enjoy it to the exclusion of all others who have no better right to it than himself; physical control of a thing is possession of it. See, Webster's New International Dictionary.

The Law Court is bound by the facts as stated in the agreed statement, and the facts agreed upon in this case do not show that the carcass of the moose was ever in the possession of the wardens. The statement does not say so. It says that the wardens "came upon the dead carcass of a moose at Byron, Maine. The moose had been shot and the hind quarters removed by someone unknown. The said wardens set up a vigil in the bushes near the moose for the express purpose of attempting to apprehend the person who killed the moose and/or to apprehend anyone else who may take possession of any part of this moose." The agreed statement does not show that the wardens did more than to see the carcass, and to watch near it. There was no entrapment. The respondent was not inveigled or deceived to break the law. Whether or not there was ever constructive possession on the part of the wardens, under any definition, is to our view immaterial. It was the duty of the wardens to enforce the laws relating to fish and game, and it was the duty of the respondent to obey those laws. To follow the contentions of the respondent in this case to a logical conclusion, it would not be possible for a theft to be committed if a night watchman had the valuables in his constructive possession.

The respondent knew the law, and showed by his actions that the conclusive presumption that he knew the law, was in this case absolutely correct. He cut off at midnight, took into possession, and had in his possession and under his

physical control when apprehended, a part of a moose. He was carrying it away with intent to use or dispose of it. The possession of "moose, or parts thereof" was forbidden by the statute, and as intended by the legislature the statute applied to the action of the respondent.

Were any other construction of this statute possible it would not be a recognition of the legislative wisdom in its attempt to protect moose from total destruction in this State. The construction asked for by the respondent would cause wardens to become obsolete and would tend to make moose hunting by day a healthy exercise, and obtaining possession by night a pleasure excursion, in despite of legislative prohibition.

A jury verdict of guilty would certainly be sustained on the foregoing statement of facts.

In accordance with the stipulation, the entry must therefore be

*Judgment for the State.*