**STATE of Maine**

v.

**Don Cotesworth GELLERS.**

Supreme Judicial Court of Maine.

Oct. 4, 1971.

Richard S. Cohen, Peter W. Culley, Asst. Attys. Gen., Augusta, for plaintiff.

Don Cotesworth Gellers, pro se.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

POMEROY, Justice.

Seasonably after the return of a verdict of guilty of the crime of unlawful possession of Cannabis Sativa L, 22 M.R.S.A. § 2362, the defendant has appealed from the judgment entered thereon.

The indictment, which was the keystone of the prosecution, was originally in three Counts. Trial was had only on Counts I and II, each of which charged unlawful possession of Cannabis Sativa L at a different time.

The jury found the defendant not guilty of Count I and guilty of Count II.

We uphold the judgment for reasons which are hereafter stated.

The Points on Appeal are many. We choose to discuss only a few in detail.

Prior to the time trial was had, the defendant moved for a change of venue. He said in his motion and he now says before this Court, that because he has long championed the rights of a minority group in his County,[1] prejudice which is directed at such minority group by many of the citizens of Washington County, is directed against him. He asks us to rule a fair trial was not had because of such prejudice.

1. The defendant is a member of the Bar of the State of Maine.

He also argues that pretrial newspaper publicity made a fair trial impossible of accomplishment. A number of newspapers were placed in evidence in support of the motion for change of venue and are in the record now before us.

The Point which the defendant raises as to pretrial publicity was completely discussed and decided in State v. Beckus, Me., 229 A.2d 316 (1967). We do not view the rule there announced to be different from that position taken by the United States Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed. 2d 600 (1966), and in Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed. 2d 543 (1965).

We dispose of this Point by affirming what we said concerning it in State v. Beckus, supra.

The voir dire examination of prospective jurors in this case was much more extensive than that usually had, even in capital cases. A careful examination of this record reveals no pattern of prejudice directed at either the minority group or the defendant.

■ The motion for change of venue was denied and properly so, we hold. It seems to us, convincing evidence that he could and did get a fair trial was the fact that he was found not guilty of Count I of the two Counts on which he was tried.

We find no reasonable basis for his complaint as to the refusal to grant his motion for change of venue.

The evidence indicates that a police informer and a Maine State police detective joined forces in the investigation which led to the arrest and conviction of the defendant. The informer was well known to the defendant. The police detective posed as a man calling himself "Burke." The defendant's claim is that "Burke" was represented by the informer to be a man who was wanted by the police for various crimes in Massachusetts and elsewhere. The informer had a counterfeit court summons for a traffic violation to explain why he had sought out the defendant. Evidence was produced to the effect that the informer let it be known to the defendant and others in his home that "Burke" was "a very tough guy" and represented that he, "Burke," had once shot a man in a parking lot in Massachusetts upon very little provocation.

The detective and the informer first appeared at the defendant's house while the defendant was absent. A man named Cox appeared at the defendant's door and invited them into the house. Several people were present. A few hours later, the informer and the detective left. As they were leaving, Cox told them to come back any time they wished. Six or seven visits to Gellers' home followed, prior to Gellers' return from a trip outside the State.

The testimony of the informer was that while he was in the Gellers home, Gellers drove up in his automobile and came into the house. The informer's testimony concerning the meeting was as follows:

"Q   And if you know, did Mr. Gellers meet Detective Hall at that time?

A   Yes, he did.

Q   And who introduced Mr. Hall to him?

A   I did.

Q   What did you tell Mr. Gellers?

A   Told him, 'I would like you to meet Larry Burke from Boston, tough guy.'

\*      \*      \*      \*      \*      \*

Q   Did you have anything further to say about Detective Hall at this time to Mr. Gellers?

A   Yes, sir.

Q   What was that?

A   I said, 'He knows Patriarca from Boston,' a guy all over the newspapers at the time."

The defendant argues that: (a) this fraud and deception violated the defendant's constitutional rights[2] and (b) that the defense of entrapment is available to him by reason of conduct of the informer and the undercover detective.

We see no basis for the claim of entrapment.

■ The crime with which the defendant was charged was not *selling* Cannabis Sativa L. Rather, it was charged only that he did "possess and have under his control" Cannabis Sativa L. If Gellers *possessed and controlled* the marijuana, he did so independently of the police activity, so there is no room for argument that the crime, i. e., "possess and have under his control" marijuana (Cannabis Sativa L), was in any way induced by police activity.

■ In State v. Calanti, 142 Me. 59, 46 A.2d 412 (1946), our Court adopted the view that whenever the State by scheme, device, subterfuge or lure induces one to pursue a course of conduct upon which he would not otherwise have entered and he commits a criminal act which he would not have committed but for the action of the State's agent, conviction for such crime is against public policy. We held that where the criminal intent *originates* in the mind of the accused and the offense is completed, the mere fact that the accused is furnished an *opportunity* to commit a crime or was aided in the commission thereof by an agent of the State in order to secure evidence necessary to the prosecution, constitutes no defense.

This rule is in accord with the position taken by the Supreme Court of the United States in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932),

and later in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

The Appellant asks us to go far beyond the position we took as to the defense of entrapment, and declare on the facts in this case, the conduct of the police requires that the judgment of guilty be set aside.

As to the claim of violation of constitutional rights, a quotation from Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), is particularly apt.

"Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se*. Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest." 385 U.S. 206, 210, 87 S.Ct. 424, 427.

In *Lewis* the facts were: A federal narcotics agent, acting under cover contacted Lewis and represented himself as "Jimmy the Pollack." He then informed Lewis that a mutual friend had told him a supply of marijuana might be obtained from Lewis. In that case, as here, the Appellant argued there was a violation of Appellant's rights arising under the Fourth Amendment of the Constitution of the United States, resulting from the entry into the Appellant's premises, accomplished by means of fraud and deception.

The United States Supreme Court found there was no such violation.

In that case, as here, the Appellant placed principal reliance on Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed.

2. For an exhaustive discussion of the extent to which the right to privacy is protected by the Federal Constitution and circumstances under which the Fourth Amendment to the Constitution is violated by a fraudulent entry into one's home by a government agent, see United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

647 (1921), as authority for his position. The Court, speaking through Mr. Chief Justice Warren, easily distinguished between *Gouled* and *Lewis* on the facts.

We find the distinction there made is here applicable.

We are unable to see any constitutional issue presented by the State's conduct.[3]

The statute under which the Appellant was prosecuted is the Uniform Narcotic Drug Act, 22 M.R.S.A. § 2362. It was first adopted in Maine by Public Law, 1941, chapter 251. Sec. 2362 of the Act, under which this Appellant was convicted, reads as follows:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this chapter."

Specifically, the State alleged this defendant possessed and had Cannabis Sativa L under his control. At the time this of-

3. We recognize the area here under discussion is very controversial. We do not ignore the attitude of many exemplified by Mr. Justice Douglas, when he said in Osborn v. United States, 385 U.S. 323, 347, 87 S.Ct. 429, 442, 17 L.Ed.2d 394 (dissenting):

"A householder who admits a government agent, knowing that he is such, waives of course any right of privacy. One who invites or admits an old 'friend' takes, I think, the risk that the 'friend' will tattle and disclose confidences or that the Government will wheedle them out of him. The case for me, however, is different when government plays an ignoble role of 'planting' an agent in one's living room or uses fraud and deception in getting him there. These practices are at war with the constitutional standards of privacy which are parts of our choicest tradition."

On the other hand, repeatedly the Supreme Court has referred to the "necessity for undercover police activity," especially in certain types of crime. For example, in *Lewis*, supra, that Court said:

"Indeed, it has long been acknowledged by the decisions of this Court, see Grimm v. United States, 156 U.S. 604, 610 [15 S.Ct. 470, 472, 39 L.Ed. 550] (1895), and Andrews v. United States, 162 U.S. 420, 423 [16 S.Ct. 798, 799, 40 L.Ed. 1023] (1896), that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents. The various protections of the Bill of Rights, of course, provide checks upon such official deception for the protection of the individual. See, e. g., Massiah v. United States, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] (1964); Trupiano v. United States, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663] (1948)." 385 U.S. 206, 208, 87 S.Ct. 424, 426, 17 L.Ed.2d 312.

The subject has long occupied the interest of legal writers. See for example: "Judicial Control of Informants, Spies, Stool Pigeons and Agent Provocateurs," 60 Yale Law Journal 1091. "Entrapment," 73 Harvard Law Review, 1333. "Administration of the Affirmative Trap and the Doctrine of Entrapment, Device and Defense," 31 University of Chicago Law Review, 137. "Entrapment. An analysis of disagreement." 45 Boston University Law Review, 542.

In *Lewis* at page 210 [87 S.Ct. at page 427] this language is found in the footnote:

"Particularly, in the enforcement of vice, liquor or narcotics laws, it is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses. The participants in the crime enjoy themselves. Misrepresentation by a police officer or agent concerning the identity of the purchaser of illegal narcotics is a practical necessity. * * * Therefore, the law must attempt to distinguish between those deceits and persuasions which are permissible and those which are not."

We cannot and do not find the State can *never* overstep constitutional bounds by the use of fraud and deception in criminal investigations. It is impossible to lay down any general rules applicable to all factual situations. We can only say that each case must be judged upon its own facts and as the United States Supreme Court said in *Lewis*:

"The various protections of the Bill of Rights, of course, provide checks upon such official deception for the protection of the individual." 385 U.S. 206, 209 [87 S.Ct. 424, 426, 17 L.Ed.2d 312].

fense was alleged to have been committed, to possess and have marijuana (Cannabis Sativa L) under one's control was a felony.[4]

The State does not claim the Appellant was ever found to be in *personal exclusive possession* of marijuana. Rather, the State's position is that the Appellant had marijuana under his control and in his *constructive* possession.

In order to convict one of the offense of possession of a narcotic drug, it is necessary to show that such defendant was aware of the presence and character of the drug and was intentionally and consciously in possession of it, either exclusively, jointly with others, or constructively.

Physical possession which gives a defendant immediate and exclusive control is, of course, always sufficient if the other elements of a crime are present. The possession, however, need not always be exclusive nor need it be actual physical possession. It is sufficient proof of possession if it be established beyond a reasonable doubt that the drugs involved were subject to his dominion or control.

No short generalized answer can ever be given to the question: What constitutes sufficient external relationship between the defendant and the narcotic property to complete the concept of possession?[5]

This Court has often discussed constructive possession with relation to possession of stolen goods. See for example: State v. Poulin, Me., 277 A.2d 493 (1971); State v. Mosher, Me., 270 A.2d 451 (1970); State v. Barrett, Me., 256 A.2d 666 (1969); State v. Russo, 127 Me. 313, 143 A. 99 (1928).

In State v. Gaudin, 152 Me. 13, 120 A.2d 823 (1956), this Court was concerned with a statute, the pertinent part of which read:

"No person shall hunt, kill or have in his possession any caribou or moose or parts thereof."

As to the meaning of the word "possession", it was said:

"The word 'possession' is often ambiguous in its meaning. It is used to describe actual possession and also to describe constructive possession. Actual and constructive possession are often so blended that it is difficult to see where one ends and the other begins. National Safe Deposit Co. v. Stead, 232 U.S. 58, 34 S.Ct. 209, 58 L.Ed. 504. Actual possession exists where the thing is in the physical control, or immediate occupancy of the party. Constructive possession is that which exists in contemplation of law without actual personal occupation. Constructive possession often refers to the person lawfully entitled to immediate physical possession and control. In criminal law possession usually means care, management, physical control, or the secret hiding or protection of something forbidden or stolen. See Bouvier's Law Dictionary (3d Revision) 'Possession', 33 Words and Phrases, 'Possession', 71–101 and many cases there cited.

"Possession is synonymous with occupied, held, or controlled; possession is the fact or condition of having such control of property that a person may enjoy it to the exclusion of all others who have no better right to it than himself; physical control of a thing is possession of it. See, Webster's New International Dictionary."

---

4. By Public Law, 1969, c. 443, a new section of the statute was enacted relating specifically to sale and possession of Cannabis Sativa L (marijuana). Possession (first offense) was made a misdemeanor.

5. For collection of cases discussing what constitutes possession of narcotics, see 91 A.L.R.2d 810. See also: Cazares-Ramirez v. United States, C.C.A. 5, 406 F.2d 228 (1969) and cases cited.

The Supreme Court of Vermont in State v. Ballou, 127 Vt. 1, 238 A.2d 658 (1968), quoted extensively from *Gaudin* with approval.

In United States v. Baratta, 397 F. 2d 215 (1968), C.C.A. 2, Certiorari denied, 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276, Judge Gignoux, District Judge of the District of Maine, sitting by designation on the Circuit Court of Appeals for the 2d Circuit wrote:

"It is well established that a person may have possession for the purposes of section 174,[6] even though he does not have physical custody, so long as he has dominion and control over the narcotics. United States v. Jones, 308 F.2d 26, 30 (2d Cir. 1962); United States v. Hernandez, 290 F.2d [86, 2 Cir.] supra at 90. As this Court has recently stated, possession may consist of 'a working relationship or a sufficient association with those having physical custody of the drugs so as to enable [one] to assure their production, without difficulty, to a customer as a matter of course * * *'; but, on the other hand, 'a casual facilitator of a sale, who knows a given principal possesses and trades in narcotics but who lacks the working relationship with that principal that enables an assurance of delivery, may not be held to have dominion and control over the drug delivered and cannot be said to have possession of it.'" 397 F.2d 215, 224.

In Spataro v. State, Fla., 179 So.2d 873 (1965), the District Court of Appeals of Florida, 2d District, Andrews, J. said:

"The accused has 'constructive possession' of a chattel where he has knowledge of its presence coupled with the ability to maintain control over it or reduce it to his physical possession, even though he does not have actual personal dominion.

People v. Fox, 1962, 24 Ill.2d 581, 182 N.E.2d 692. The courts have not encountered difficulty where the accused has had actual physical possession. Nor have they had difficulty where the accused has had 'exclusive' control or access to the property where the chattel was found. This has not been true, however, in those cases where several people have had access to the property, and the defendant had only constructive possession. It should be noted that possession need not be 'exclusive', but may be joint with one or more persons. Bourg v. United States, 5 Cir. 1960, 286 F.2d 124." 179 So.2d 873, 877.

We must apply the tests above described to the evidence in this case now before us.

The jury has found the defendant guilty.

We must, therefore, view the evidence in a light most favorable to the State.

■ In Maine the principles applicable to the review of civil trials on a general motion, govern appeals in criminal cases. State v. Duguay, 158 Me. 61, 178 A.2d 129 (1962).

"Under the familiar rules the verdict stands unless manifestly wrong and we take the evidence in the light most favorable to the successful party." Ogden v. Libby, 159 Me. 485, 195 A.2d 414 (1963).

At the outset it is conceded that at no time during which the events took place which culminated in Gellers' arrest, was the marijuana, with which we are here concerned, in his physical possession.

The jury was warranted from the evidence in concluding that the informer had asked Gellers to furnish him with some marijuana because he was about to leave the country and had none of his own.

---

6. 21 U.S.C. § 174, provides in part:
   "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Thereupon, in the presence of Detective Hall, the informer and Cox, Gellers turned to Cox and said:

"Go, roll Danny six sticks."

Gellers then left the room and went into his office.

Immediately Cox walked up the stairs and remained a substantial period of time. After Cox walked up the stairs the informer twice called to him and both times he responded. Later he reappeared on the stairs, came down and handed "Danny" the "six sticks" wrapped in tinfoil. The tinfoil wrappers were found to contain marijuana upon analysis.

When the "six sticks" were handed to the informer by Cox in Detective Hall's presence, Gellers was absent from the room. The jury was also warranted in concluding from the evidence that although the informer and Detective Hall had been in the Gellers home with Cox and others, and marijuana had been discussed, it was not produced until after Gellers' return home from out of the State.

*The words used by Gellers in addressing Cox are significant.*

"Go" is a word of instruction or direction.

"Roll" is a term from which the jury could properly conclude Gellers was aware of the form in which the marijuana existed at the time he spoke and the form in which he wished it to be when delivered to "Danny."

"Six sticks." Not "some sticks," but rather a specific quantity.

From these circumstances a jury could properly conclude Cox fetched the marijuana at Gellers' express direction. Thus, they could properly find he had "a working relationship or a sufficient association with those having physical custody of the drugs [Cox] so as to enable [him] to assure their production without difficulty." United States v. Baratta, supra.

The ultimate question then becomes: Do these circumstances exclude all reasonable hypotheses except that defendant did "possess [and] have under his control" Cannabis Sativa L in violation of 22 M.R.S.A. § 2362.

We find the jury was justified in concluding any hypothesis, save that of guilt, was unreasonable.

■ The defendant in his Designation of Points on Appeal says the Court's instructions to the jury with respect to constructive possession and control were erroneous. We note no objection was made to the Presiding Justice as is required by Rule 51(b).

Thus, the Point was not saved at the trial.

■ The defendant designates as Points 5 and 6, that the Court

"erred in not granting the Defendant's Motion for Dismissal, dated October 7, 1968, particularly in view of the fact that many people in the State were concurrently being charged with the identical conduct as a misdemeanor as possession of marijuana is today only a misdemeanor, it is not fair to now punish the Defendant as a felon."

This precise issue was discussed and decided adversely to the defendant in State v. Alley, Me., 263 A.2d 66 (1970).

We affirm what was there said.

Complaint is entered that the Presiding Justice did not order certain matters to be included in the record on this appeal.

We find no merit to this complaint.

■ The defendant complains that the Justice who reconvened the Grand Jury to consider the evidence the State was to present against the defendant was the same Justice who presided at the trial. This the defendant characterizes as "improper."

*There is no merit in this contention.*

■ The defendant also complains that he was refused opportunity to examine the Grand Jury minutes. The motion, the denial of which raises this question, recited that the purpose of the inspection was "that the defendants may learn the probable cause of the accusations against them, particularly not having had a preliminary hearing."

We must and do hold that the motion was properly denied.

In State v. Douglas, 150 Me. 442, 114 A. 2d 253 (1955), this Court held no inquiry can be made whether evidence before the Grand Jury was either competent or legally sufficient.[7]

■ The 7th Point on Appeal the defendant has designated is that "The Trial Court erred in its increase of the sentence after the appeal had been taken."

The record reveals the Presiding Justice originally sentenced the defendant as a convicted misdemeanant.

Thereafter, prior to the commencement of execution of the sentence [8] and within 60 days after the sentence was imposed, the Presiding Justice caused the defendant to be brought before him and there imposed the sentence which is the judgment in this case. In so doing the Justice was acting in accordance with the provisions of Rule 35 (a), Maine Rules of Criminal Procedure, and such action was not error.

We dismiss the other Points on Appeal without discussion because no discussion of them is warranted.

We are satisfied justice has been done.

The entry must be,

Appeal denied.

ARCHIBALD, J., sat at argument but did not participate in this opinion.

---

7. At one time the New York Court held that the fact the defendant had not had a preliminary examination or hearing was adequate ground for permitting inspection of Grand Jury minutes, see for example, People v. Foody, 38 Misc. 357, 77 N.Y.S. 943 (1902) ; People v. Proskey, 32 Misc. 367, 66 N.Y.S. 736 (1900) ; but see: People v. Muhlstein, Co. Ct., 153 N.Y.S. 909 (1915).

8. A fact in this case which is without legal significance. See Rule 35(a), Maine Rules of Criminal Procedure.