STATE of Maine

v.

David McCRILLIS.

Supreme Judicial Court of Maine.

July 11, 1977.

Joseph M. Jabar, Dist. Atty., William Batten, Asst. Dist. Atty., Skowhegan, for plaintiff.

Mark S. Kierstead, Waterville, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

In December 1975 three separate indictments were returned in the Superior Court (Somerset County) charging defendant David McCrillis with having committed the crimes, respectively, of furnishing amphetamine (22 M.R.S.A. § 2210), selling amphetamine (22 M.R.S.A. § 2210–A) and selling marijuana (22 M.R.S.A. § 2384). In a consolidated trial before a jury held January 21–22, 1976 defendant was found guilty as charged in each indictment. Defendant has taken a consolidated appeal from each of the judgments of conviction.

We deny the appeal.

The evidence warranted jury findings of the following facts.

Two undercover agents of the government, Kenneth R. Gilman and Kenneth Lovett, were in contact with the defendant commencing in August, 1975 when defendant sold marijuana to Gilman at defendant's trailer in Pittsfield.[1] During the course of that autumn, Gilman and Lovett kept in touch with defendant. On October 23, 1975 they went to defendant's trailer and there purchased from him marijuana in 6 bags—this sale being one of the three crimes charged against defendant. Previously that same day, defendant had sold marijuana to two other persons.

While making the purchase of marijuana, Gilman and Lovett talked with defendant about possibly buying "crossroads" (amphetamine). Defendant quoted a price of $200.00 per 1000. No sale was then made because defendant did not have a thousand to sell and the agents did not have $200.00. However, defendant gave the agents three amphetamine pills as a sample to see if they liked them and also gave them his telephone number so they could call him to learn when defendant would have enough for a sale. This incident of defendant's providing the three sample amphetamine pills gave rise to the charge against defendant of furnishing amphetamine.

After agent Gilman had telephoned defendant on several occasions he was at last informed by defendant that defendant had "crossroads" to sell. Gilman went to defendant's trailer on November 1, 1975 and made a purchase of "crossroads." This transaction was the basis for the charge against defendant of selling amphetamine.

In denying defendant's appeal, we have considered and rejected each of defendant's many points on appeal—all concerned with defendant's claim that government agents entrapped him into committing the crimes charged against him. We find worthy of extended analysis only the issues hereinafter discussed.

1.

After evidence of police conduct potentially bearing on entrapment had come into the case, the prosecution concentrated on showing defendant's predisposition to engage in the criminal conduct charged against him. The prosecution thus conceived the law of Maine to be in accordance with the so-called "subjective" formulation of entrapment.

---

1. No criminal charge was brought against defendant as to this transaction. It was shown in evidence as bearing upon defendant's predisposition in relation to defendant's claim that government agents "entrapped" him into committing the crimes charged against him.

In *State v. Matheson,* Me., 363 A.2d 716 (1976), decided approximately seven months after the trial in the case at bar, we characterized the "subjective" formulation of entrapment as being "in agreement with the principles to which this court has adhered" (p. 720) at least since our decision in *State v. Gellers,* Me., 282 A.2d 173 (1971). In light of what was said in *Matheson* defendant acknowledges that the "subjective" formulation of entrapment was the law of Maine which governed at his trial.

■ This being so, the law precludes exoneration of defendant on grounds of entrapment if the prosecution adequately proved that defendant had "predisposition" to commit the crimes charged against him, notwithstanding that there was conduct of government agents which helped to induce defendant's criminal behavior.

Even on this basis, however, defendant argues that in the instant situation the prosecution failed to provide adequate proof of defendant's predisposition to furnish and sell amphetamine. Defendant maintains that, at best, the evidence shows only defendant's predisposition to sell marijuana and, as a matter of law, such predisposition may not be held tantamount to a predisposition to furnish or sell amphetamine.

■ We may assume, without deciding, that the law should differentiate between the polar extremes, for example, of a predisposition merely to possess other than "hard" contraband drugs and a predisposition to engage in the trafficking of heroin. As to the instant circumstances, however, we decide that, in terms of the nature of the activity and the drugs, the selling of marijuana is so closely akin to the furnishing, or selling, of amphetamine that in legal

contemplation predisposition to the former is of the "same general character" as the latter. See: *State v. Matheson,* supra (p. 723).[2] Accordingly, we hold that if the jury is satisfied beyond a reasonable doubt of defendant's predisposition to sell marijuana, the predisposition of defendant to sell contraband drugs is thereby sufficiently established, for purposes of entrapment, to render without legal significance that the charges against defendant may involve amphetamine rather than marijuana.

### 2.

During defense counsel's cross-examination of undercover agent Gilman, Gilman was asked several times whether he had smoked marijuana with defendant at defendant's trailer. Gilman persistently denied that he had ever smoked marijuana with the defendant. Further probing on cross-examination, defense counsel asked Gilman whether at any time in his life he had smoked marijuana or used amphetamines, and Gilman responded categorically that "never, not even once" had he smoked marijuana or used amphetamines.

One of defendant's friends, Anthony Alameda, was later permitted to testify that he saw Kenneth Gilman smoking marijuana with the defendant, in November 1975, at defendant's trailer. Shortly after this testimony was in evidence, defendant further sought to contradict Kenneth Gilman by purporting to have Alameda testify that he had seen Gilman smoking marijuana on September 6, 1975 at the Gateway Motor Inn in Newport. Upon objection by the State, the presiding Justice excluded this proffered testimony, ruling:

"It is a collateral attack which would open the door for endless testimony pro

2. In terms of the severity of punishment prescribed by the Legislature for these crimes, the significant differences are: (1) as to maximum punishment, a third or subsequent sale of amphetamine is punishable by more than 10 years imprisonment (22 M.R.S.A. § 2215) whereas a third or subsequent selling of marijuana is punishable by not more than 10 years imprisonment (22 M.R.S.A. § 2384); and (2) as to minimum punishment, a second or subsequent offense of selling marijuana is subject to a man-

datory minimum punishment of 2 years imprisonment (22 M.R.S.A. § 2384) whereas the mandatory minimum is 5 years imprisonment for a second offense of selling amphetamine and 10 years for a third or subsequent such offense.

In our view these punishment differences are insufficient to render the two crimes so different in kind as to prevent the proof of a predisposition to sell marijuana from constituting proof of predisposition to furnish, or sell, amphetamine.

and con. You have already introduced evidence by this witness that Mr. Gilman, . . . was smoking on the occasion that he was present at the home of the Defendant, and I will exclude the evidence as to September 6th."

There was no error in this ruling. It is well-settled that the presiding Justice has discretion to exclude evidence calculated to impeach, or contradict, testimony first elicited from a witness during cross-examination as to matters which are collateral because not bearing upon the substantive issues of the trial. *State v. Kouzounas,* 137 Me. 198, 17 A.2d 147 (1941); *State v. Bunker,* Me., 351 A.2d 841 (1976).

Whether agent Gilman had smoked marijuana with the defendant was, arguably, a matter not collateral since it tended to show the agent's technique of winning defendant's confidence and could be deemed to bear substantively upon entrapment as an issue in the case. It was apparently on this basis that defendant was permitted to introduce Alameda's testimony to contradict Gilman's denial, as elicited on cross-examination of him, that Alameda had seen Gilman smoking marijuana with the defendant.

When, however, defendant sought to go further to have Alameda testify that he had seen Gilman smoking marijuana on an occasion and in a context having no relation to defendant or Gilman's business with defendant, to contradict Gilman's testimony—elicited from him on cross-examination—that Gilman had never smoked marijuana with anyone at any time, such proffered testimony was directed to a collateral matter:—matter irrelevant to the substantive issue of entrapment and not admissible in evidence "for any purpose independently of the contradiction." See: *State v. Kouzounas,* supra 137 Me. at 199, 17 A.2d at 147.

It was properly excluded, therefore, as proffered for the purpose of impeaching Gilman as a witness concerning collateral matter first introduced in the case by defense counsel's cross-examination of Gilman.[3]

### 3.

In his charge to the jury concerning the ultimate burden of proof as to entrapment the presiding Justice subdivided the inquiry into two parts: (1)

"whether the Defendant was ready and willing to commit the crime without persuasion. . . . whether he had a propensity to commit the crime";

and (2)

"whether the Defendant was led or was induced to commit the crime by anyone acting for the Government or the State; . . .."

Relating the burden of proof to the facets of entrapment as above differentiated, the presiding Justice charged that (1) the

**3.** As illustrative of the difficulty faced by a defendant claiming entrapment who is denied opportunity to delve fully into the overall credibility of an undercover agent, defendant makes mention of the concluding portion of the charge of the presiding Justice in this case in which he twice admonished the jury: "[T]he only person on trial here is David McCrillis, not the agents . . . .." By thus adverting to the charge, defendant appears to be saying that since the presiding Justice can emphasize that the undercover agent is not a defendant on trial, the collateral impeachment rule should be relaxed to allow defendant full opportunity to show the jury that the undercover agent is not a person to be believed. The thought is that when entrapment is claimed, the reality is that the undercover agent is in a credibility contest with the defendant. Hence, defendant should be permitted in plenary fashion to counterbalance any effort, like that of the presiding Justice here, to de-emphasize the importance of the jury's evaluating the credibility of the undercover agent.

The argument misses the mark. Here, if defendant faced a problem, it was not in the application of the collateral impeachment rule but in the overkill of the presiding Justice's charge. The charge could have been objected to as erroneous because it informed the jury, through the metaphor of who was standing trial, that the jury was not to be too much concerned about the credibility of the undercover agents.

Defendant, however, failed to make appropriate objection to this erroneous aspect of the charge, and we do not look upon the error in the charge as sufficiently egregious to require reversal of the judgments of conviction in the "manifest error-serious injustice" context that defendant was deprived of a fair trial.

"State has the burden to prove beyond a reasonable doubt that . . . [defendant] did have the propensity or . . . was going to commit the crime . . ";

but (2) as to whether defendant was "led or . . . induced to commit the crime" by government agents,

"Defendant has the burden of persuading you . . . by a fair preponderance of the evidence; in other words, the tipping of the evidence slightly in his favor."

■ Defendant made no objection to this latter portion of the instruction which placed upon him an ultimate burden of proof.

In *State v. Matheson,* supra, without deciding that *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) constitutionally mandated the result but choosing, nevertheless, to adopt as Maine's public policy the policy evaluations to which *Mullaney v. Wilbur* was directed, we decided: (1) the only burden reposing on defendant as to entrapment is to ensure the presence of evidence sufficiently generating entrapment as an issue of the case; and (2) once the entrapment issue is sufficiently generated, defendant must be exonerated unless the prosecution establishes beyond a reasonable doubt that either (a) there was no inducing impact on defendant's behavior attributable to the conduct of government agents or (b) even if there was, defendant was nevertheless not an "innocent" person, viz., a person lacking independent "predisposition" to engage in the criminal activity charged.

Since, as we have already observed, *Matheson* was decided approximately seven months after the trial in the case at bar, there could be a question whether the

*Matheson* approach to burden of proof should apply to the charge of the presiding Justice in this case. We find it unnecessary, however, to be concerned with this question in the instant situation. Assuming, without deciding, that *Matheson* may have retrospective applicability to that portion of the instant instructions requiring that the defendant prove by a preponderance of the evidence that the conduct of government agents played a part in inducing him to commit the crime charged, we conclude that, here, such hypothesized error was beyond a reasonable doubt harmless.[4]

The evidence in this case foreclosed rational dispute that defendant was predisposed to selling marijuana. Since we have decided herein that, in relation to entrapment as an issue, once the State has sufficiently proved defendant's predisposition to sell marijuana, the State has thereby established the predisposition of defendant to sell contraband drugs sufficiently to render without legal significance that the drug involved in the charges against defendant is amphetamine rather than marijuana, here, the only alternative open to rational jurors, acting reasonably, was the conclusion that defendant was predisposed to commit all three of the crimes charged against him. Under the "subjective" approach to entrapment established by *State v. Gellers,* supra, and *State v. Matheson,* supra, predisposition thus having been indisputably shown, it was immaterial to the outcome of the case whether conduct of government agents may have helped to induce defendant's criminal behavior. Hypothesized error in the charge of the presiding Justice on this immaterial issue was thus harmless beyond a reasonable doubt.

The entry is:

*Appeal denied.*

All Justices concur.

4. Because we thus find harmless error, we need not be concerned with whether, despite the failure of counsel to make appropriate objection at trial, we should approach the error in the charge of the presiding Justice as if defendant had actually claimed error at the trial—on the rationale that, especially as shown by the recent decision of the Supreme Court of the United States in *Patterson v. New York,* —— U.S. ——, 97 S.Ct. 2319, 52 L.Ed.2d —— (1977), it would have imposed an overly strict burden on defense counsel to expect him to project from *Mullaney v. Wilbur,* supra, decided approximately six months before the trial in the instant case, the existence of error in a charge which adhered in some part to the traditional conception that entrapment was an "affirmative defense" as to which an ultimate burden of proof could be placed on defendant.