STATE OF MAINE *vs.* JAMES CALANTI ET AL.

Kennebec.     Opinion, March 18, 1946.

*Ralph W. Farris*, Attorney General of Maine, and *William H. Niehoff*, Assistant Attorney General, for plaintiff.

*Michael Pilot and Locke, Campbell & Reid*, for defendants.

Sitting: Sturgis, C. J., Thaxter, Manser, Murchie, Tompkins, JJ.

Tompkins, J. This is an action of debt to recover the penalty of a bond given by the defendant James Calanti and The Aetna Casualty and Surety Company as surety, which bond was given in accordance with the provisions of P. L. 1934, Chap. 301, and acts additional thereto and amendatory thereof, and rules and regulations pursuant thereto. The case is before the Court on exception.

The section of the statute involved reads

"Hotels, clubs, and restaurants. No license shall be granted to a hotel, club or restaurant until the applicants file with the Liquor Commission a surety bond payable to the State of Maine in the penal sum of one thousand dollars as liquidated damages in case of default, as hereinafter mentioned. Such bond shall have as surety a duly authorized surety company, or two individuals to be approved by the Commission. All such bonds shall be conditioned for the faithful observance of all the laws of the State of Maine and the rules and regulations pursuant thereto relating to spirituous and vinous liquors. Such bond shall be filed with and retained by the Commission. Upon the revocation of any license in this section mentioned the Attorney General shall bring an action of debt in any county in the State upon the bond given by such licensee to recover the penal sum thereof as liquidated damages."

The breach of the bond was the sale to one E. S. Thurston, an inspector for the Maine State Liquor Commission, in violation of the rules and regulations of said Commission relating to the sale of spirituous and vinous liquors to be consumed elsewhere than upon the premises covered by the license. Certain admissions were made at the commencement of the trial by the at-

torney for the defendant, Calanti, in which the defendant, Calanti, admitted the sale of liquor to E. S. Thurston, inspector for the Maine State Liquor Commission, of a pint of Seagram's seven crown whiskey on July 31, 1944, and a pint of Seagram's seven crown whiskey August 14, 1944, at Winterport, Maine, where the defendant was a licensee of the Maine State Liquor Commission to conduct a place for the sale of intoxicating liquors for consumption on the premises. These two pints were sold for the purpose of not being consumed on the premises, but to be taken out. Thurston was not a guest at the hotel at the time. Defendant also admitted he signed the bond in suit.

In view of the admissions the State introduced no testimony. The defendant then took the stand in his own behalf and was asked by his attorney the following questions:

"Q. Tell the Court and Jury just what he said to you and what you did.

"A. He came to the place and had the cold and sat down and said 'Nice place. Can I have a drink?' 'Sure.' He tell me what he wanted and I pass him a drink. He talk about business and one thing and another and he said 'I was up in the liquor store and I stood up an hour and a half and can not get a pint of liquor.' I say 'I have not a permit to sell outside.' He said 'You have a couple of pints up there.' I said 'Yes, but I have not a license to sell out.' He said 'All right, I have another drink.' He had another drink and kept talking just the same. Anyway, after he had two drinks he got up and said 'I have to go to Portland and I don't know if I get sick. I have got to have a pint.' I said 'I am not supposed to, but all right, I will let you have a pint.'

"Q. Did he get in his car and drive off?

"A. I didn't see it.

"Q. And then he came back a couple of weeks later?

"A. Yes.

"Q. Tell us what happened that time.

"A. Most of the same thing but he didn't fight so much then as before, keeping talking about it."

THE COURT: "What do you mean, he didn't fight?"

MR. PILOT. "Resistance."

WITNESS: "Not so much."

"Q. It was the same man — Mr. Thurston?

"Yes.

"Q. When he asked for a pint did you tell him he could have it?

"A. I said I could not do it. He said 'You did it once before and it is all right now.' That is why."

### CROSS EXAMINATION.

"Q. You knew when he was there on the 31st of July that it was not legal for you to sell him that pint of whiskey?

"A. Yes, I do.

"Q. You told him you would not sell it to him?

"A. He begged me to, that is why.

"Q. When he came back the second time — did he have a drink the second time?

"A. Yes.

"Q. Isn't it a fact that all he did the second time was lay $5.00 on the table . . .

"A. I didn't say that. He said 'I have got to have another pint.'

"Q. You didn't have to sell it to him, did you?

"A. True. I did, though.

"Q. He had to coax you a while before you sold him the liquor?

"A. That is right."

At the close of the testimony and on motion of the plaintiff the presiding justice directed the jury to return a verdict for the plaintiff in the sum of one thousand dollars, to which the defendant seasonably objected.

The defendant in his exception makes the issue in this case as to whether the violation of the rules and regulations of the Maine State Liquor Commission, instigated by an inspector of the Maine State Liquor Commission, is such a default on the bond that the State of Maine can recover the penal sum of one thousand dollars as liquidated damages.

1. The defendant urges under the exception that public policy will not permit a municipality to derive a profit from acts which were deliberately instigated and contrived by its officer, and cites the case of *People* v. *Braisted*, 13 Colo., App. 532, also reported in 58 P., 796.

2. To sustain such prosecution would be in effect to say that such officers have a license to inveigle citizens into the commission of violations so that money may be extracted from them.

In *People* v. *Braisted*, supra, the court held that the town could not recover a penalty of a druggist for selling intoxicating liquor in violation of the ordinance of the town, where the price of the liquor was furnished to the buyer by the attorney for the town with instructions to purchase from the defendant for the purpose of procuring a violation of the ordinance.

In 31 Colo., page 90, 71 P., 1108, the Supreme Court of Colorado, in reference to the case of *People* v. *Braisted*, supra, says

"We are not prepared to announce as a doctrine that town attorneys are to be so handicapped in the performance of their duties that prosecutions may not be sustained by the testimony obtained in the manner that testimony in this case was obtained."

The defendant argues that the State should not recover on the bond because the defendant was entrapped into the violation of its terms by an officer of the State Liquor Commission. The weight of authority supports the view

"That a person making an unlawful sale of liquor is not excused from criminality when the sale is induced for the sole

purpose of prosecuting the seller, and it is no defense that the act charged was done at the instance or procurement of a public officer whose purpose was to obtain evidence of violations of the law." 30 Am. Jur., Par. 403.

It appears to be the general rule in that class of cases where the doing of a particular act is a crime regardless of the consent of anyone, that if the criminal intent originates in the mind of the accused, and the criminal offense is completed, the fact that an opportunity is furnished, or the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor constitutes no defense. To the argument that the act is done at the instigation or solicitation of an agent of the government, the courts have responded that the purpose of the detective or governmental agent is not to solicit the commission of or to create an offense, but to ascertain if the defendant is engaged in an unlawful business. 18 A. L. R. 146 and cases therein cited.

It is no defense to prosecution for the illegal sale of liquor that the purchase was made by a spotter, detective, or hired informer. *Nelson* v. *Roanoke*, 24 Ala., App. 227; 135 Southern, 312; *State* v. *Hamrick*, 163 S. E., 868; *State* v. *Jarvis et al.*, 143, S. E., 235.

Where the only inducement used by the officer to procure the sale of liquor was a willingness to buy the doctrine of entrapment is not available. *Tripp* v. *Hennessey et al.*, 10 R. I., 128.

In *State* v. *Cowling*, 161 Wash., 519, 297, P., 172, on prosecution for the unlawful sale of whiskey, it was held that the defendant was not entrapped where it appeared that the federal agent had pretended to be a friend of a young university student and inveigled himself into the confidence and friendship of the defendant and his wife in order to secure evidence of violations of the law.

The defense of entrapment is

"Applicable in those cases whereby some scheme, device, subterfuge or lure the accused is induced to adopt and pur-

sue a course of conduct which he would not have otherwise entered upon, and in such cases a conviction is against public policy."

*State v. Lambert,* 148 Wash., 657; 269 P., Rep., 848 and cases there cited.

As in the case of *State* v. *Lambert,* supra, this Court fails to see in the case under consideration anything indicating any lure, inducement or subterfuge on the part of the officer which could have caused the defendant to act. The officer's inquiry and solicitation for liquor, and his willingness to purchase no more than offered an opportunity to commit the criminal act which was entirely lacking in the elements of lure or inducement and, if there was any subterfuge whatever in it, it was only that of concealing by the officer of his identity, or his failure to disclose it, which was wholly insufficient to invoke the rule, there being an entire lack of evidence of inducement or of any act from which a reasonable inference of inducement might be drawn.

## DAMAGES.

The attorney for the defense urges in his brief that the bond in question is a penal bond, that the legislature so stated, but set forth that the penalty should be regarded as liquidated damages. If thus recognized (as a penal bond) the damage to the State is negligible in the event of breach.

On breach of the conditions of the bond the penal sum of the bond became due and payable as liquidated damages. The court in this state has said, in speaking of a contract providing for liquidated damages,

"It is evident that the forfeiture must be construed as liquidated damages and not as penalty. The defendant has so stated explicitly and without qualification. True, this is not conclusive, though this part of the contract, like all others, is to be construed so as to carry out the intention of the

parties, yet to ascertain that intention we are to examine the words used, its nature and the purpose to be accomplished, and all its parts. For this purpose the statements of the parties, though not conclusive, are strong evidence, and conclusive unless overcome by other tests to be applied. In this case the tests to be applied confirm and corroborate this statement rather than weaken it. One of the most usual and certain tests is whether otherwise the damage would be wholly uncertain and incapable or very difficult of being ascertained except by conjecture. In this case we find all the tests fairly definite and emphatic. The damage caused by breach must necessarily be uncertain and incapable of being ascertained." *J. Winslow Jones & Co., Ltd.* v. *Binford,* 74 Me., 439.

In *United States* v. *Engelberg,* 2F, 2d, 720, the Court says:

"In most if not every case where the bond is given to the State or the Government to compel obedience to its laws, no definite loss can be truly averred or definitely proven. To treat the sum named otherwise than as a penalty for forfeiture inflicted by the sovereign power for a breach of its laws as a sum fixed or as a certain punishment for the offense would be to render worthless the obligation so taken."

Also to the same effect *Albany* v. *Cassel,* 11 Geo., App., 745, 76 S. E., 105, which was an action brought by the city for the breach of the bond of a seller of near beer conditioned, among other things, on the keeping of an orderly place and the observance of the state prohibition law and the city ordinance regulating the sale of near beer, it was held that the full amount of the bond could be recovered. The court said:

"It would be impossible to prove any pecuniary loss from the violation of the terms of the bond, and if this were required the taking of the bond would be a mere sham and a useless formality."

To the same effect see *State* v. *Canon,* 73 N. H., 434. Also *Commonwealth* v. *J. & Amoeschlin,* 314 Pa., 34, 170 A., 119; *Commonwealth* v. *Eclipse Literary and Social Club,* 117 Pa., Super. Ct., 349, 178 A., 341; *Quintard* v. *Cochran,* 50 Conn., 34; *Sullivan* v. *Burkhard,* 93, App. Div. 31, 88 N. Y. S., 1003.

The object of the bond has been set out and defined in the case of *Clement* v. *Reaveley,* 126 App., Div. 215, 110 N. Y. S., 418.

The court there says:

"The primary object of the bond is to secure thè observance of the law and the penalty named is what the State exacts for failure to comply with the conditions under which the right to traffic in liquor has been given. . . . If the conditions of the bond have been broken the amount of the recovery is fixed and absolute; if not, there is nothing due."

To the same effect *Lyman* v. *Shenandoah Social Club,* 39 App. Div. 459, 57 N. Y. S., 372.

*Exceptions overruled.*