**STATE of Maine**

v.

**Tom MATHESON.**

Supreme Judicial Court of Maine.

Sept. 2, 1976.

David M. Cox, Dist. Atty., Eugene W. Beaulieu, Asst. Dist. Atty., Bangor, for plaintiff.

Jerome B. Goldsmith, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE*, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

With the marked increase in the number of prosecutions had for alleged violations of various "drug" statutes, the "entrapment" issue is being raised with increasing frequency. Occasion for the raising of this issue results naturally from the fact that the technique most commonly employed in the detection of violations of these statutes is the use of undercover agents of the State and purchases by such agents of drugs from the person thereafter indicted and charged with illegal sale of drugs.

This case now before us raises such issue and provides us with occasion to discuss entrapment in the special context in which we have described it as a *"defense."* *State v. Calanti,* 142 Me. 59, 46 A.2d 412 (1946) (emphasis supplied).

This appeal results from the denial of appellant's motion for acquittal on charges of selling LSD–25 (D–lysergic acid diethylamide). 22 M.R.S.A. § 2212–C.

We deny the appeal.

At trial it was stipulated that the transaction here under discussion constituted a "sale" within the meaning of 22 M.R.S.A. § 2212–C. The sole issue presented at trial and now is whether or not under the evidence in this case the appellant ought to be freed from criminal responsibility for the sale by reason of the government activity surrounding the sale.

The factual framework in which the issue arises is substantially as follows. Appellant and Harold Smith became acquainted when both were confined at the Boys Training Center in South Portland. Both were released from such confinement. Smith became a police informer.

On August 22, 1974, Smith, in company with Dennis Dyer, a police undercover agent, approached the appellant in a Bangor restaurant and asked him if he knew where they could purchase some drugs. The appellant replied that he thought they could buy some brown mescaline if a certain individual was at a specified location. The appellant, Smith, Dyer, and a fourth person identified as Sam Gray, then proceeded to the place designated by the appellant. The appellant got out of the car and approached an individual who was standing by a fountain. A brief conversation ensued, following which appellant returned to the car and informed its occupants that he could purchase *"five hits of mescaline"* for ten dollars. Agent Dyer supplied the appellant with ten dollars, and appellant again approached the man at the fountain. An exchange took place, after which the appellant returned to the car and handed five small pellets to Dyer. Upon subsequent analysis the pellets were identified as D-lysergic acid diethylamide (LSD–25).

At trial the appellant took the stand and testified in his own behalf. He said that he and Smith were the best of friends; that Smith had asked him if he would help him purchase drugs on several occasions but that he had always refused; that on the day of the purchase he only agreed to help Smith buy the drugs because Smith was such a good friend and because Smith had asked him to buy drugs so many times that he "was just getting sick of it . . . it was almost embarrassing." He further testified that it was Sam Gray who had suggested there might be a person

* Weatherbee, J., sat at argument and participated in consultation but died prior to adoption of opinion.

willing to sell mescaline at the fountain and that he, appellant, made no money from the transaction.

Appellant maintains that his testimony was sufficient to raise the issue of whether or not he was induced to participate in the drug sale under such circumstances as to constitute entrapment. Once that issue was raised or generated by the appellant, the burden, he says, became on the State to demonstrate by means of evidence that beyond a reasonable doubt he was predisposed to act illegally.[1]

Appellant contends that the only evidence of predisposition in the case was the testimony concerning prior involvement with drugs. This evidence, he says, was inadequate in itself to establish predisposition.

In *Kadis v. United States,* 373 F.2d 370 (1st Cir. 1967), Chief Judge Aldrich, speaking for that court, said:

"The doctrine of entrapment as developed by the courts is far from simple, and had led to a number of misunderstandings." *Id.,* at 372.

The truth of that statement is evident from a reading of the conflicting views of the majority and the dissenters in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

As the First Circuit in *Kadis* pointed up, by quoting from the majority opinion of Mr. Chief Justice Hughes in *Sorrells,* supra:

" 'The question whether it [entrapment] precludes prosecution or affords a ground of defense, and, if so, upon what theory, has given rise to conflicting opinions.' " *Kadis,* supra, at 372, quoting

*Sorrells,* supra, 287 U.S. at 441, 53 S.Ct. 210.

The *Kadis* court continued:

"Unhappily, this statement is no less true today. We believe that one reason for the confusion is that there may not be general agreement about 'the true ends to be pursued.' " *Kadis,* supra at 372, quoting *Sherman,* supra, 356 U.S. at 379, 78 S.Ct. 819 (Frankfurter, J., concurring).

■ Recently, in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), the Supreme Court of the United States settled the question about "the true ends to be pursued" when it adopted the "subjective" approach to the defense of entrapment and focused on the conduct and propensities of the defendant. The jury, the Supreme Court said, must determine, as a question of fact, the defendant's predisposition to the crime. Reaffirming the principle set forth in *Sorrells,* supra, and *Sherman,* supra, the Court stated "that the entrapment defense 'focus[es] on the intent or predisposition of the defendant to commit the crime' rather than upon the conduct of the Government's agents." *Hampton,* supra, at 488, 96 S.Ct. at 1649, quoting *United States v. Russell,* 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366, 371 (1973). The *Hampton* Court emphasized that when the defendant's predisposition is established, governmental misconduct can never be the basis of an entrapment defense. *Hampton, supra,* 425 U.S. 484, 96 S.Ct. 1646.

The *Hampton* Court then continued:

"In holding that 'it is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play,' 411 U.S. at 436, 93 S.

---

1. No complaint is made to us concerning the instructions to the jury. The presiding justice explained "entrapment" in the language of *State v. Gellers,* Me., 282 A.2d 173 (1971).

Nothing specific was said concerning the burden of proof as to entrapment, and no instructions were requested.

Ct. 1637 at 1645, 36 L.Ed.2d at 376, we of course rejected the contrary view of the dissents in that case and the concurrences in *Sorrells*, and *Sherman*." *Hampton*, supra, at 488, 96 S.Ct. at 1649.

■ It seems clear then that at least since *Hampton* "the true ends to be pursued" are to prevent the conviction of one charged with crime when governmental activity has

"implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission, . . . ." *Sorrells*, supra, 287 U. S. at 442, 53 S.Ct. at 212–213.

The *Hampton* approach in terms of the federal law is in agreement with the principles to which this court has adhered. *State v. Gellers*, Me., 282 A.2d 173 (1971).

The question which the appellant by this appeal seeks to have us address is, is it the burden of the State to establish that a defendant was predisposed to act illegally when the claim of "entrapment" is generated by the defendant?

This court has, at least three times since *State v. Calanti*, supra, had occasion to discuss the doctrine of entrapment.[2] In none of these cases was the issue as to the burden of proof raised. It is true that throughout the opinions in the cases above cited, we continuously and consistently referred to the "defense of entrapment." *State v. Allen*, Me., 292 A.2d 167, 169 (1972); *State v. Carvelle*, Me., 290 A.2d 190, 192 (1972); *State v. Gellers*, supra, at 176; *State v. Calanti*, supra, 142 Me. at 64, 46 A.2d at 414–15.

Maine has traditionally recognized the existence of affirmative defenses in criminal cases. These "affirmative defenses" are usually made by way of confession and avoidance, i.e., the defendant does not deny

doing the acts complained of but raises a reason, usually based on public policy considerations, which bars conviction and punishment notwithstanding that the acts constituting a crime have been established beyond a reasonable doubt.

With respect to these affirmative defenses, this court has traditionally considered that the burden of establishing these facts demonstrating nonculpability is always on the defendant who raises such affirmative "defense," and the quantum of proof required is "fair preponderance." *See State v. Armstrong*, Me., 344 A.2d 42 (1975).

Now for the first time the issue with respect to the burden of proof as to "entrapment" is squarely raised.

In 1970 the Supreme Court of the United States declared in *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970):

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1073.

Later, in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the United States Supreme Court was concerned with the rule which had obtained in Maine for at least 150 years [*see Brine v. State*, Me., 264 A.2d 530 (1970)] that required a defendant charged with murder to prove that he acted "in the heat of passion on sudden provocation" in order to reduce a homicide from murder to manslaughter. In that case, the Court applied its *In Re Winship* rationale and held that even though the presence or absence of "heat of passion" serves only to palliate or

2. *State v. Gellers*, Me., 282 A.2d 173 (1971); *State v. Carvelle*, Me., 290 A.2d 190 (1972); *State v. Allen*, Me., 292 A.2d 167 (1972).

enhance the punishment which may be inflicted, the Due Process Clause of the Federal Constitution requires that the prosecution prove beyond a reasonable doubt the absence of "heat of passion on sudden provocation" when the issue is properly generated in a homicide case.

Mr. Justice Powell, writing for the Court, found this result compelled from analysis of the competing interests involved. He commenced with a historical analysis, concluding that

> "the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." *Mullaney v. Wilbur,* supra, 421 U.S. at 696, 95 S. Ct. at 1888.

He likewise observed that the defendant's liberty and reputation interests are equally implicated by a conclusion that a defendant is guilty of "murder" or "manslaughter." Thus, he said, *Winship* applies to facts which are determinative of the degree of criminal culpability.

The interests of society and the reliability of jury verdicts was found to be an important factor in determining whether the assignment of a burden of proof to a defendant in a criminal case comported with Due Process requirements.

We submit the issue now before us—i.e., where the burden of proof of entrapment ought to be placed—to the same analysis used in *Wilbur.*[3]

Examination of the decisions within the federal system reveals it is there well established that the burden is on the government to establish beyond a reasonable doubt that the defendant was predisposed to commit the crime. *E.g., United States v. West,* 511 F.2d 1083, 1086–87 (3rd Cir.

1975); *United States v. Wells,* 506 F.2d 924, 925 (5th Cir. 1975); *United States v. Spivey,* 508 F.2d 146, 151 (10th Cir.), cert. denied, 421 U.S. 949, 95 S.Ct. 1682, 44 L. Ed.2d 104 (1975); *United States v. Glassel,* 488 F.2d 143, 146 (9th Cir. 1973), cert. denied, 416 U.S. 941, 94 S.Ct. 1945, 40 L. Ed.2d 292 (1974); *United States v. Ambrose,* 483 F.2d 742, 752–53 (6th Cir. 1973); *Kadis v. United States,* supra, at 373–74; *United States v. Landry,* 257 F.2d 425, 429 (7th Cir. 1958).

Similarly, several state courts which have decided the issue recently require the state to negate the issue of entrapment beyond a reasonable doubt.[4] *E.g., State v. Whitney,* 157 Conn. 133, 135–37, 249 A.2d 238, 239–40 (1968); *People v. Housby,* 33 Ill.App.3d 762, 764, 338 N.E.2d 461, 462–63 (1975); *Simmons v. State,* 8 Md.App. 355, 364–65, 259 A.2d 814, 816–17 (1969); *State v. Grilli,* Minn., 230 N.W.2d 445, 446 (1975); *State v. Murphy,* Or.App., 535 P. 2d 779 (1975); *State v. Curtis,* Utah, 542 P.2d 744, 746 (1975); *State v. Amundson,* 69 Wis.2d 554, 564–65, 230 N.W.2d 775, 781 (1975).

It is apparent that this is the contemporary approach.

As in *Wilbur,*[5] the defendant's interest in his liberty and reputation are significantly present in a case where entrapment is raised as an issue. If the facts support a finding of entrapment, there is an absence of any criminal culpability. If the defendant is not criminally culpable, he would be acquitted. He would not be incarcerated nor would any socially unacceptable stigma attach to his reputation. Conversely, if entrapment did not exist he might be deprived of his liberty and most certainly a stigma would result from being found criminally culpable.

3. For a similar approach in another context, see *Buzynski v. Oliver,* 538 F.2d 6 (1st Cir. 1976).

4. *Contra, Brown v. State,* Del., 310 A.2d 870, 871 (1973); *State v. Gilman,* 110 R.I. 207, 222, 291 A.2d 425, 434 (1972).

5. In a situation where sudden and adequate provocation exists, the defendant's liberty and reputation are affected by attaching merely a different degree of criminal culpability.

Therefore, the consequences of finding entrapment as opposed to not finding entrapment are exactly opposite. These reasons all militate in favor of placing the burden on the State. *See Mullaney v. Wilbur*, supra, 421 U.S. at 698, 95 S.Ct. 1881.

Likewise, the societal interest in the reliability of jury verdicts as indicated in *Winship*, supra, 397 U.S. at 363–64, 90 S. Ct. 1068, and *Wilbur*, supra, 421 U.S. at 699–700, 95 S.Ct. 1881, is equally present when entrapment is the proffered defense.

It is essential that there be no doubt that innocent men are being condemned.

To require the defendant to prove entrapment might undercut the community's confidence in the criminal judicial process.

■ The existence of entrapment would free the defendant from all criminal culpability. *See State v. Gellers*, supra, at 176; *State v. Calanti*, supra, 142 Me. at 64–65, 46 A.2d at 415. If entrapment exists, the defendant's liberty is not affected and no stigma attaches. The dramatic consequences of finding that the accused was entrapped make it fundamentally unfair to place the burden of proving it, even if only by a preponderance of evidence, upon the defendant. In no other factual situation is the reliability of the jury's verdict so susceptible to criticism as when the gravamen of the issue is where did the criminal intent originate—in the mind of the defendant or implanted by the State's deceptive techniques.

The integrity of the judicial system mandates that the jury's verdict upon this issue be unimpeachable. This result can only be reached if the State must demonstrate the defendant's predisposition beyond a reasonable doubt. Placing this burden on the State is in keeping with Due Process requirements.

■ We then conclude that the rule in Maine should be and is that when the issue of entrapment is properly generated by the evidence,[6] the burden is upon the State to establish beyond a reasonable doubt the predisposition of the accused to commit the crime.

It becomes apparent we agree with appellant's contention that the burden of proof as to the issue of predisposition is upon the State. The appellant argues that that being so, the evidence is legally inadequate to establish his predisposition beyond a reasonable doubt and, therefore, the prosecution's case fails as a matter of law.

We disagree.

We sustain the trial justice's refusal to grant the requested motion for judgment of acquittal.

■ A motion for judgment of acquittal should only be granted "*if the evidence is insufficient to sustain a conviction of such offense . . . .*" Rule 29(a), M.R. Crim.P. When such a motion is made, the standard by which the trial judge should decide is

"to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution." *State v. Call*, Me., 322 A.2d 64, 66, n. 1 (1974).

The sufficiency of the proof is measured by the "totality of the evidence." *State v. Jackson*, Me., 331 A.2d 361, 364 (1975); *see State v. Bickford*, Me., 308 A.2d 561, 566 (1973); *cf. State v. Hamilton*, Me., 237 A.2d 586 (1968).

■ The issue of entrapment was sufficiently raised in this case.[7] It was there-

---

6. As to when an issue is generated and the quantum of evidence required, *see State v. Inman*, Me., 350 A.2d 582, 587 (1976); *State v. Millett*, Me., 273 A.2d 504 (1971).

7. The appellant introduced evidence as to his overall reluctance and hesitation to become involved with drugs. There was evidence that a third person made the suggestion

fore incumbent on the State to present sufficient evidence from which the jury could find beyond a reasonable doubt that the appellant was not an otherwise innocent person who was induced to commit the crime, the idea of which originated in the minds of the police.[8]

The State presented evidence that upon a single request by an informant the appellant indicated he knew where drugs could be purchased. With little or no hesitation, he directed the officer to a prestated location, when upon arriving the appellant immediately inquired of a certain individual as to the availability of drugs. There was also evidence that the appellant was acquainted with the person he purchased the drugs from and knew he was in the business of selling drugs. Even the appellant's own testimony, though generally contradictory to that presented by the State, indicated a willingness to attempt to locate and purchase a controlled substance.

The appellant admitted at the trial that he had been involved with drugs up until two years before the time of the offense with which we are concerned.[9]

■ Evidence that the appellant had committed offenses of the same general character as that for which he was tried, i. e., possession and unlawful use of drugs, is evidence of predisposition.

> "[I]t is an offense of that general character, and not the precise offense as to time, place and persons involved, which must be the subject of inquiry." *State v. Whitney*, supra, 249 A.2d at 240.

■ Among the factors which may be considered as tending to show predisposition are a prior involvement with offenses of the same general character; the possession of the means to commit the offense; the absence of nagging persistence on the part of the officer; knowledge of the place where the drugs may be obtained; and an acquaintance with a person having a drug supply.

■ Accepting all the evidence in the light most favorable to the State (*State v. Call*, supra), we find the evidence was overwhelming to establish beyond a reasonable doubt predisposition on appellant's part. The police activity merely furnished "an opportunity to commit a crime." *State v. Allen*, supra, at 173.

■ The facts that appellant had prior involvement with drugs, that there was no repeated badgering by the undercover agent and little or no hesitation on appellant's part when he was solicited to sell drugs, and all the other circumstances described above, clearly demonstrate that the appellant was not an *"innocent"* person and therefore derived no protection from his claim of entrapment.

At the trial the State prevailed, as it should have, on the evidence.

The entry must be:

Appeal denied.

All Justices concurring.

DELAHANTY, J., did not sit.

---

as to where the drugs concerned could be purchased. Finally, the appellant testified that at the agent's continued suggestions, they persisted with their search.

8. As used here, "innocent" means the absence of a predisposition or state of mind

which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act with which the accused is charged.

9. There was no evidence that the appellant had been convicted of selling drugs.