**STATE of Maine**

**v.**

**Rick PHILPOT.**

Supreme Judicial Court of Maine.

Oct. 22, 1976.

Joseph M. Jabar, Dist. Atty., Augusta, for plaintiff.

Warren M. Poulin, Winslow, for defendant. ·

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

As we did in *State v. Shaw*, Me., 343 A. 2d 210 (1975), with respect to "cannabis", we now have occasion to interpret the "drug" statute with respect to the extent of the proscriptions of the possession and sale of hallucinogenic drugs described in 22 M. R.S.A. §§ 2212–B and 2212–E.

The appellant was charged by indictment with having sold an hallucinogen in violation of 22 M.R.S.A. § 2212–E.[1] This appeal was seasonably filed after a judgment entered on a jury verdict of guilty.

We deny the appeal.

At trial, prosecution witness, agent Wayne Viger of the Division of Special Investigations, testified that on July 16, 1974, at 7:30 p. m., he and another agent entered a Waterville discotheque to investigate trafficking in illicit drugs. About three hours after entering the establishment, agent Viger approached a group of patrons and asked where he might buy some "dope." Upon being told he could make such a purchase at the discotheque, he returned to his seat to await a contact. Agent Viger testified further that presently the defendant appeared at his table and, after a brief exchange, the two agents accompanied the defendant outside where he sold agent Viger a quantity of LSD known as "window pane acid" for $100.

The appellant's assignments of error fall into two broad categories: the adequacy of the indictment, and the sufficiency of the State's evidence regarding his entrapment defense. He begins by questioning the adequacy of the indictment in two ways. First, he asserts that the term "lysergic acid diethylamide (LSD)" used in the indictment is a generic term which subsumes legal as well as illegal forms of the drug. The indictment's failure to specify an illegal form, he submits, renders it fatally imprecise.[2] Expanding his argument, the defendant contends that lysergic acid diethylamide has four distinct forms.[3] Only two of these forms, he maintains, are ·proscribed by 22 M.R.S.A. § 2212–B.[4]

A specific reference to D-lysergic acid diethylamide is found in the statute. In the opinion of the State's expert, l-lysergic acid diethylamide is an optical isomer. Possession of optical isomers is expressly prohibited by the statute.

---

* WEATHERBEE, J. sat at argument and participated in consultation but died prior to adoption of opinion.

1. 22 M.R.S.A. § 2212–E prohibits the sale of "certain hallucinogenic drugs" listed in 22 M.R.S.A. § 2212–B infra.

2. The indictment charged that the defendant did "sell a certain halluinogenic [sic] drug, to wit, lysergic acid diethylamide (LSD), to one Wayne Viger, in violation of Title 22, Section 2212–E of the Maine Revised Statutes Annotated."

3. The chemical intricacy of lysergic acid diethylamide was discussed in *United States v. Farber*, 306 F.Supp. 48 (N.D.Calif.1969). There, the court pointed out that lysergic acid diethylamide exists in two major forms: the free base form and the salt form. The court also recognized that "[t]he free base form of lysergic acid diethylamide can exist in four different forms, to wit: 1) d-lysergic acid diethylamide, 2) l-lysergic acid diethylamide, 3) d-isolysergic acid diethylamide, 4) l-iso-lysergic acid diethylamide." *Id.*, at 50, n. 1. The latter two forms are the subject of the defendant's hypothesis.

4. 22 M.R.S.A. § 2212–B, which prohibits the possession of "certain hallucinogenic drugs" is incorporated by reference into 22 M.R. S.A. § 2212–E. The list of prohibited drugs in 22 M.R.S.A. § 2212–B reads in pertinent part: "Such hallucinogenic drugs shall include any of the following substances, their optical isomers, and their salts: D-lysergic acid diethylamide (LSD or LSD–25) . . . ."

The appellant avers, however, that the two remaining forms *"l"* and *"d"* isolysergic acid diethylamide, are not proscribed by the express terms of the statute. For this reason, he says, their possession and sale are not illegal. The failure of the indictment to differentiate the legal form from the illegal, the appellant concludes, is a legal error which makes the indictment defective.

As the validity of the appellant's contention must be determined by reference to the breadth of the statute, we must analyze the statute. Recently, we considered the chemical composition of lysergic acid diethylamide [*State v. Clapp*, Me., 335 A.2d 897 (1975)]. There we expressly reserved opinion as to whether possession of l-lysergic acid diethylamide was proscribed by 22 M.R.S.A. § 2212–B. The appellant's contention pertaining to the possession of the two forms of isolysergic acid diethylamide was not considered by us in *Clapp*. The appellant does not dispute the classification of *l*-lysergic acid diethylamide as an "optical isomer." Therefore, we need only determine whether *"l"* and *"d"* isolysergic acid diethylamide are included within the proscriptions of 22 M.R.S.A. § 2212–B.

The Legislature's prohibition in express terms of the possession of the "optical isomers" of lysergic acid diethylamide is the Legislature's acknowledgment of the particular chemical composition of lysergic acid diethylamide as scientifically established. This chemical composition is most clearly expressed in *The Hallucinogens* [5]

under the heading, "The Chemistry of LSD." It is diagramically displayed as reproduced below:

The diagram is followed by this explanation: "Carbon numbers 5 and 8 are assymetric so that *4 optically active isomers* are possible. These are d-lysergic acid diethylamide, l-lysergic acid diethylamide, *d-isolysergic acid diethylamide and l-isolysergic acid diethylamide."* [6] (Emphasis supplied.)

■ "D" and *"l"* forms of isolysergic acid diethylamide are optical isomers. As such, they fall within the statute prohibiting possession of ". . . any of the following substances, their *optical isomers,* and their salts"[7] (emphasis supplied), and it necessarily follows that possession or sale of such chemicals is prohibited.

■ We conclude, then, that the indictment now before us is not defective. There was no need to specify which form because all four forms of lysergic acid diethylamide are included within the proscriptions of 22 M.R.S.A. § 2212–B.

5. A. Hoffer and H. Osmond, *The Hallucinogens*, 88 (1967) [hereinafter cited as *The Hallucinogens*].

The description of the optical isomers of lysergic acid diethylamide contained in this work is based on studies by Arthur Stoll and Albert Hofmann, Hofmann being credited with the discovery of lysergic acid diethylamide in the late 1930's. *United States v. Farber,* supra, *306* F.Supp. at 52.

Both Stoll and Hofmann have produced numerous works on the drug. A. Stoll, 47 *Chem.Rev.* 197 (1950) ; A. Stoll and A. Hofmann, 38 *Helv.Chim.Acta.* 421 (1955) ; A. Stoll, A. Hofmann and F. Troxler, 32 *Helv. Chim.Acta.* 506 (1949) *cited in* 50 *Chem. Abstr.* 2620a (1956) ; A. Stoll and A. Hofmann, *"d-Lysergic Acid Diethyl Amide,"* U. S. patent 2,438,259, March 23, 1948 (assigned to Sandoz, Ltd.).

6. *The Hallucinogens,* supra, n. 5, at 88.

7. 22 M.R.S.A. § 2212–B.

■ The appellant next asserts that even though the statute embraces all four forms of lysergic acid diethylamide, the indictment's use of the generic term nevertheless renders it fatally deficient. The indictment's deficiency stems, he contends, from its failure to meet the standard set out in *State v. Beckwith* that "[i]n criminal prosecutions, the description of the offense in the complaint or indictment must be certain, positive and complete" enabling the accused to understand the accusation without having to go "beyond the record." *State v. Beckwith,* 135 Me. 423, 426, 198 A. 739, 741 (1938). The appellant argues that the instant indictment does not meet this standard because expert testimony was required to determine whether the forms of the drug included under the generic term were also included in 22 M.R.S.A. § 2212-B, thus forcing him to go "beyond the record."

■ In considering this argument we note first that ". . . the object of the rule requiring the charge to be particularly, certainly and technically set forth is threefold: To apprise the defendant of the precise nature of the charge made against him; to enable the court to determine whether the facts constitute an offense and to render the proper judgment thereon; that the judgment may be a bar to any future prosecution for the same offense." *State v. Longley,* 119 Me. 535, 537, 112 A. 260, 261 (1921); *accord, State v. Ward,* 156 Me. 59, 158 A.2d 869 (1960). If these purposes are met, the indictment is valid.

■ An indictment adequately notifies the appellant of the nature of the accusation if it would so inform a man of "reasonable and normal intelligence." *State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963). In *State v. Alley,* Me., 263 A. 2d 66 (1970), we approved the use of the word "marijuana" in an indictment because "[t]he meaning of the term 'marijuana' is well and commonly known" and is, therefore, ". . . more informative to a person of 'common understanding'"

than the technical scientific nomenclature. *Id.,* at 70. The requisite degree of notice demanded of an indictment was also considered in *United States v. Farber,* 306 F. Supp. 48 (N.D.Calif.1969). The defendants there, as here, asserted that by using the term "lysergic acid diethylamide" and its acronym "LSD" the indictment did not clearly inform them of the character of the government's charge. After citing popular familiarity with the expression "LSD" through "the widespread use of the term by the mass media and by members of the public itself", *Id.* at 52, the court found the indictment to be sufficiently clear to give notice of the offense to persons of "common understanding." *Id.* at 54. We conclude likewise that the terms "lysergic acid diethylamide (LSD)" are precise enough to afford a person of "reasonable and normal intelligence" notice of the charge.

By the same reasoning, we find the indictment to be exact enough both to enable the presiding Justice to gauge the sufficiency of the accusation and to serve as an effective bar to future prosecutions for the same offense.

The purposes of the indictment having been here met, we find the indictment to be valid.

Finally, the appellant challenges the sufficiency of the evidence presented to disprove the issue of entrapment. Our recent case of *State v. Matheson,* Me., 363 A.2d 716 (1976), definitively states the Maine rule regarding the issue of entrapment. We held that

"when the issue of entrapment is *properly generated* by the evidence, the burden is upon the State to establish beyond a reasonable doubt the predisposition of the accused to commit the crime." (Emphasis supplied.) *Id.,* at 722.

The appellant argues that the State has not met its burden and therefore the prosecution's case must fail as a matter of law.

We disagree.

**126**

■ The State need only prove predisposition beyond a reasonable doubt when the issue of entrapment is properly presented.[8] The appellant mentions several facts which he argues have raised the issue of entrapment. He notes that the undercover agent made the original request to purchase the drugs; that the agent concealed his relationship with the authorities from the appellant; that the agent had no previous knowledge of the appellant's identity or previous activities; and that there was some discussion as to the price to be paid for the drugs.

These are the only facts raised by the appellant in his argument to support the presentation of the issue. Our own examination of the evidence reveals no additional factors which would strengthen his position.

There is no evidence of repeated requests and badgering of the appellant by the agent. There is no evidence that the appellant did not have the means by which to commit the offense. There is no evidence of even the slightest hesitation by the appellant to commit the offense.

8. We need not decide, and expressly refrain from doing so, as to whether the evidence

■ We have previously stated that the mere willingness to make an illegal purchase is not entrapment. *State v. Carvelle,* Me., 290 A.2d 190, 193 (1972); *State v. Calanti,* 142 Me. 59, 64, 46 A.2d 412, 414 (1946). Similarly, the denial by the agent of his status as a narcotics officer is "entirely lacking in the legal elements of lure or inducement to justify the invocation of the rule . . . ." *State v. Allen,* Me., 292 A.2d 167, 172–73 (1972). Likewise, the agent's lack of personal knowledge of the appellant's predisposition does not ipso facto negate the issue.

We find no evidence which would generate the issue of entrapment.

The record discloses no reversible error.

The entry must be:

Appeal denied.

All Justices concurring.

WEATHERBEE, J., sat at argument and participated in consultation but died prior to adoption of opinion.

DELAHANTY, J., did not sit.

as presented would be sufficient to sustain such a burden.