**STATE of Maine**

**v.**

**Marguerite ,SHERBURNE.**

Supreme Judicial Court of Maine.

Dec. 9, 1976.

**1128** 

Fernand R. LaRochelle, Arthur A. Stilphen, Asst. Attys. Gen., Augusta, for plaintiff.

Cushman D. Anthony, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

To Herbert's question, "Wouldst thou both eat thy cake, and have it?"[1] the appellant apparently responds, "Yes, I would." This is manifest by the issues she raises in this appeal from a judgment entered on a jury verdict of guilty of the crime of sale of cannabis. 22 M.R.S.A. § 2384 (repealed 1975, Laws of Maine, c. 499, § 52, effective May 1, 1976).

We deny the appeal.

By so doing, we intend to make it clear that those who are charged with sale of contraband (of which there are ever increasing numbers) cannot eat their cake, i. e., generate the issue of entrapment, and have it, too, i. e., continue to have their past involvement with contraband kept from disclosure to the trier of fact.

At trial the appellant admitted selling the marijuana to an undercover agent but raised the issue of entrapment.

Two of the prosecution witnesses, agents John Sullivan and Gary Hamilton, testified that they saw the defendant on June 20, 1972, at approximately 1:45 p.m. at Ogunquit Beach, Ogunquit, Maine. After a short, casual conversation, the possibility of purchasing drugs from the defendant was discussed.[2] The result of this discussion was that the agents accompanied the appellant to her rooming house. They waited outside, and the appellant returned a few minutes later. She produced an ounce of marijuana which she sold to the agents.

The appellant raises two issues on appeal. Her first claim of error involves the receipt into evidence of testimony tending to establish her familiarity with the use of hard drugs. Her argument seems to be that such evidence was so prejudicial to her that such prejudice outweighed its probative value to establish that for which it was offered, i. e., her predisposition to commit the crime.

---

* WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

1. George Herbert (1593–1633), "The Size," *The Poetical Works of Herbert and Vaughan* (Riverside Press, Cambridge) 1880.

2. The record indicates that ,the agents had previously met the defendant. The record is unclear as to whether. the agents or the defendant initiated the discussion which concluded in the sale of the cannabis.

■ It seems to be agreed that appellant had generated the issue of entrapment.[3] In the posture of this case at the time the State offered evidence tending to establish appellant's prior use and familiarity with hard drugs, the applicable rule of law came into play. As we said in *State v. Matheson*, Me., 363 A.2d 716 (1976),

> "when the issue of entrapment is properly generated by the evidence, the burden is upon the State to establish beyond a reasonable doubt the predisposition of the accused to commit the crime." *Id.,* at 722.

As a result of this rule of law, in the case at bar the State had the burden of establishing beyond a reasonable doubt that the appellant was predisposed to commit the crime. In order to sustain this burden, the State had to introduce evidence which would accomplish this.

Our court has consistently adhered to the rule that

> "where the criminal intent *originates* in the mind of the accused and the offense is completed, the mere fact that the accused is furnished an *opportunity* to commit a crime or was aided in the commission thereof by an agent of the State in order to secure evidence necessary to the prosecution, constitutes no defense." (Emphasis in original.)

*State v. Gellers*, Me., 282 A.2d 173, 176 (1971).

Or, as the United States Supreme Court said in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976),

> "the entrapment defense 'focus[es] on the intent or predisposition of the defendant to commit the crime' rather than upon the conduct of the Government's agents."

*Hampton*, supra, at 488, 96 S.Ct. at 1649, 48 L.Ed.2d at 118, *quoting United States v.*

*Russell*, 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366, 371 (1973).

■ Evidence which would tend to show predisposition is not limited to any one set of circumstances. There is no gainsaying that evidence establishing an accused's prior convictions of the same offense as that in issue at trial or of similar offenses; that having the means available by which the crime may be committed, for example, having drugs on hand available for delivery if an opportunity for a sale arises; that the accused was acquainted with and often consorted with a person or persons having a drug supply readily available and ready compliance with a request to sell drugs, would all be facts which would provide a basis for concluding the accused was predisposed to commit the crime. *State v. Matheson,* supra, 363 A.2d at 723; *see State v. Philpot,* Me., 365 A.2d 122 (1976).

■ Similar in nature would be evidence of an accused's knowledge of articles used in connection with drugs. Likewise, evidence of an accused's knowledge of different methods of ingesting "illicit drugs" would also be relevant in determining the accused's predisposition to commit the crime.

■ Because the appellant sought to be freed of criminal responsibility for the sale of marijuana, which she admits she made, by reason of a claim of "entrapment," she cannot now be heard to complain of an appropriate, thorough, searching inquiry into her own conduct and knowledge. It is self-evident that the burden of establishing predisposition ought not to be imposed upon the State and, by another rule which the appellant urges we adopt, deny to the State the right to present evidence which, though prejudicial, is clearly relevant in establishing predisposition.

---

3. In the instant case the defendant took the stand and testified to repeated badgering by the agents to purchase drugs.

We find no merit in appellant's first claim of error.

Appellant also claims as error the trial court's refusal, upon objection being made, to exclude certain evidence which the appellant claims was not made available to her by the State.[4] Appellant argues that since the State did not comply with the discovery order, the evidence should not have been received. Since it was received over her objection, she says reversible error resulted.

Appellant's Rule 16 discovery motion had sought

"Copies of any written or recorded statements made by witnesses to be called by the State of Maine at Defendant's trial and also any written recorded statements or confessions made by the Defendant."

In response to the discovery motion, the State· specifically replied that "the State has no knowledge of any written or recorded statements by witnesses or statements or confessions by defendant."

Unknown to the prosecutor who was handling the case, the undercover agent had minuted his recollection of his conversation with the accused. These handwritten notes were transcribed and eventually delivered to the Attorney General's office. Neither the handwritten notes nor the transcription of those notes was made available to appellant prior to the trial.

After the appellant testified, the prosecutor was made aware of the conversations recorded in these notes. Over objection of appellant's counsel, the agent-witness was allowed to testify as to the substance of these conversations.

Appellant argues that the trial justice abused his discretion in permitting the evidence to be admitted. She argues that exclusion of this evidence is the proper sanction for failure to comply with a discovery motion which the court had granted.

On this point appellant's argument is premised on the conclusion that the recorded notes of the undercover agent were the proper subject matter of a discovery motion.

Rule 16 of the Maine Rules of Criminal Procedure "does not contemplate that a defendant will be able to compel the production of memoranda or reports of the investigating officers which merely contain their impressions or conclusions."[5] H.

---

4. The court had acted favorably upon appellant's Rule 16, M.R.Crim.P., motion for discovery.

5. The exact notes made by the agent are not included as part of the record. Such notes were never offered in evidence. Subsequent to the jury's verdict, the defendant's counsel, while arguing a motion for judgment of acquittal, quoted from "a report that was in the possession of the attorney general's office purportedly prepared by agents Sullivan and Hamilton relative to their investigation and alleged purchase of marijuana from ‚the defendant, Marguerite Sherburne."
As quoted, the notes contained such statements as "Maggie deals quite heavily in downs, marijuana in quantity. She has big connections in Boston and also known the 'animal' real well. She shoots needles (mainly heroin)."
Of the many notes from which counsel quoted, only three appear to contain statements attributed by the agent to appellant. In one note it is said, "Before getting out of the car she said by Monday she would definitely have at least a pound of Jamaican smoke out of Boston and she would sell agents whatever we wanted. She also said there would be some good mesculine [sic], and LSD coming in and she would be able to get that too. She mentioned [name omitted] as her source, also [name omitted] . .. . . Agents had something to eat and in conversation we asked Maggie if she had anymore of that grass. She said she didn't but she was going to Boston for a pound the following day. She also stated that she needed money bad to help out with some of her friends' fines but mainly her own for getting arrested for shoplifting. Maggie said she is going to sell a lot of grass."
Other than those statements above quoted, the notes clearly contain nothing but impressions and conclusions of the agents.

Glassman, *Maine Practice, Rules of Criminal Procedure*, 137.

In *State v. Cloutier,* Me., 302 A. 2d 84 (1973), we held that Rule 16 should be liberally interpreted and applied. We here reaffirm that holding. Had there been an *intentional* withholding of the notes from the appellant, we might well be caused to view appellant's argument quite differently in this case. Because of the peculiar circumstances under which the undercover agent's notes were sent first to the agency by which he was employed, where they remained, and a typewritten copy forwarded to the Attorney General's office in Augusta, although the case was being prosecuted by the District Attorney's office in York County, no claim of bad faith on the part of the prosecutor is made.[6]

While the three notes which did contain paraphrased statements allegedly attributed to appellant were the proper subjects for discovery under Rule 16, we cannot say in the circumstances of this case that the appellant has demonstrated such prejudice resulting from the failure to furnish a copy of the agent's notes to appellant prior to the trial that we should set aside the verdict and order a new trial.

We find the appeal to be without merit.

The entry must be:

Appeal denied.

All Justices concurring.

WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

DELAHANTY, J., did not sit.

6. For a case where the prosecutor acted in bad faith, see *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967).