**STATE of Maine**

v.

**Wyman FARNSWORTH.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1982.

Decided July 21, 1982.

Michael E. Povich, Dist. Atty., Genevieve C. Stetson, Asst. Dist. Atty. (orally), Machias, for plaintiff.

Silsby & Silsby, Anthony Beardsley (orally), Ellsworth, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

After a jury trial in Superior Court, Washington County, defendant Farnsworth was convicted of operating a motor vehicle on July 20, 1980, while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312 (1978), as amended. We affirm the judgment of conviction.

Wyman Farnsworth frequently worked as a police informant, principally in matters of drug dealing and theft. Often he bought drugs at the instance of the police as part of his work. Farnsworth, Officer Goulart, a Washington County sheriff's deputy with whom he often worked, and Officer Crowley, Chief of the Jonesport Police, planned a "drug buy," to take place on July 20, 1980. Farnsworth did not meet Goulart in person, but did meet Crowley on July 19 and received from him twenty dollars with which to make the purchase. At the time of that meeting, Farnsworth was without a driver's license and was being chauffeured by his wife.

On July 20, Farnsworth telephoned Crowley several times to tell him that he could not make the purchase but would try later in the day. That evening, Farnsworth was driving down Basin Road near his home with a friend, one Alley, as passenger, when he met Deputy Sheriff Malcolm Worcester driving in the opposite direction in his police pickup. Worcester knew Farnsworth and was aware of his drinking habits but did not know he had been engaged by the police to make a purchase of drugs.

Worcester testified that he had gone to Basin Road in response to a radio report that a blue Plymouth had been forcing other cars off the road. The only blue Plymouth he had seen was Farnsworth's, sitting in Farnsworth's yard. After waiting up the road awhile, Worcester had started for home when he met Farnsworth driving his Plymouth. Because Farnsworth was on the wrong side of the road, Worcester was obliged to swerve to avoid being hit. Worcester turned around and followed Farnsworth down the road about a quarter of a mile, turning on his blue lights and sounding his siren. Farnsworth drove slowly, weaving from the left lane to the shoulder on the right. When Farnsworth stopped in front of his friend Alley's house or camp, Worcester walked up to the driver's side of the car and told Farnsworth to get out. Farnsworth asked why, and Worcester told him he was placing him under arrest for operating under the influence. When Worcester tried to put handcuffs on Farnsworth, a scuffle ensued. In response to Worcester's radio call for help, Officer Crowley came and handcuffed Farnsworth. Farnsworth's intoxication became increasingly obvious. Farnsworth was taken to the police station and given a "breathalyzer" test, which showed a high blood-alcohol level, namely, .19.

1. *Entrapment and related arguments.* The defendant requested the trial judge to instruct the jury that Farnsworth must be acquitted if found to have been driving under the influence as a result of entrapment or "unfair play" by the police. Farnsworth also requested a separate instruction that he must be acquitted if the jury found that the police led him to believe he had permission to drive or "had cover." The trial judge refused to give either instruction and instructed the jury that the police had no authority to grant anyone permission to drive under the influence. The issue on

appeal is whether the asserted defenses were generated by the evidence. If not, the trial judge did not err in refusing to instruct the jury on them. *State v. Carmichael*, Me., 405 A.2d 732 (1979).

Testimony possibly relevant to those defenses was presented by Farnsworth and by Officers Goulart and Crowley. Farnsworth insisted at trial that the officers told him he would be "covered." This was Farnsworth's key word, often repeated. He testified that on many occasions when he worked for the police, they told him that he would be "covered." On July 19 and again on July 20, the day of the planned purchase, Crowley had told Farnsworth that he would be "covered" with respect to the transaction. Farnsworth did not testify that the officers told him he would be "covered" for any specific aspect of his conduct; rather, Farnsworth said he inferred that he would be covered for driving because the purchase was to be made at a gravel pit that he could reach only by car. He denied having been told by the police that he had to obey the law; on the other hand, he admitted that no officer ever told him that he could break any law. On other occasions the police had seen him driving without a license and had let him do it, and on this occasion, Farnsworth testified, they knew he had no operator's license.

The officers' testimony was somewhat different. When they told Farnsworth that he was "covered," they meant only that he would be supplied with the necessary funds and that he could safely possess drugs to the extent necessary in his work for the police. Crowley testified that he knew Farnsworth did not have a license and had warned him he could not drive; Goulart told Farnsworth that Farnsworth had no permission to break the law except to the extent necessary to do the job at hand, namely, buying drugs. Both Goulart and Crowley knew Farnsworth could not drive legally because of his lack of a license and that the purchase of drugs would take place some miles from his house. However, Goulart testified that Farnsworth had told him someone else would drive him, and Crowley had met Farnsworth the day before when

Farnsworth was being chauffeured by his wife. Farnsworth's alcoholism was generally known in the area, but there was no evidence that either Crowley or Goulart had ever seen Farnsworth driving while visibly intoxicated.

■ Farnsworth does not argue that he ever received any specific authorization to drive while under the influence of alcohol. His argument is that the police knew he was a habitual drinker and would have to drive to make his "drug buy"; therefore, by approving the buy and telling him he would be "covered," the police approved his driving under the influence to get to the gravel pit where the purchase was to take place.

■ The evidence would not support a finding of entrapment, which has two elements. First, government action must have induced the defendant to commit the crime; second, the defendant must not have been predisposed to commit the crime. If either of those conditions is not met, the defense is unavailable. *State v. McCrillis*, Me., 376 A.2d 95 (1977); *State v. Matheson*, Me., 363 A.2d 716 (1976).

Even if everything Farnsworth said at trial is taken to be true and the police officers' statements that they told him not to break the law are rejected, the evidence shows at most that the officers told Farnsworth that he was "covered." They never told him that the coverage extended to driving while under the influence of alcohol.

In the ordinary sense of the word "induce" as it is used in the law relating to entrapment, the police certainly did not "induce" Farnsworth to drive under the influence. It was not their purpose to catch him in the act of driving while under the influence, and they did not invite or entice him to do so. To treat their conduct as entrapment would not serve the purposes of the defense, which is "primarily to deter police officers from using law enforcement techniques which 'create' criminals." 1 F. Wharton, Criminal Law § 52 at 253 (1978). *See generally* Comment, *Administration of the Affirmative Trap and the Doctrine of Entrapment: Device and Defense*, 31

U.Chi.L.Rev. 137 (1963); Park, *The Entrapment Controversy,* 60 Minn.L.Rev. 163 (1976).

In order to decide that the police officers' conduct in some sense "induced" Farnsworth to commit the crime of driving under the influence, it would be necessary to assume that Farnsworth was likely to drive while under the influence and that the police were aware of that fact. The only reason Farnsworth could have had for supposing that his driving under the influence was "covered," would have been that he had that predisposition and believed that the police knew about it. Otherwise, he had no reason whatever to suppose that such conduct would be condoned, let alone encouraged. The defense of entrapment that Farnsworth sought to have presented to the jury was thus never generated, for it rested on an assumption of his own predisposition to be under the influence of alcohol while driving to accomplish his undercover mission, and that very predisposition rendered the defense unavailable. *State v. Matheson,* 363 A.2d at 719–20.

Farnsworth also requested an instruction that he must be acquitted if the jury found that the police led him to believe that his conduct was permissible. The trial court was correct in refusing to give that instruction because there was no evidence that the police had ever given him any reason to suppose that he was permitted to drive under the influence of alcohol. His own testimony, while having some tendency in the circumstances to show he had permission to drive to the gravel pit, in no way supported the proposition that he had permission to drive while under the influence. In fact, he was not driving to the gravel pit when apprehended; he himself testified merely that he was taking his friend Alley home because he did not want other persons around when he purchased the drugs.

Because there is no evidence to support Farnsworth's contention that the police had given him permission to drive under the influence in order to perform his mission, it is unnecessary to consider on appeal whether 17–A M.R.S.A. § 52(4)(B), as it existed at the time of the offense, had any applicability to this case.[1]

The defendant argues for a defense of "governmental unfair play," independent of or supplemental to the defense of entrapment. He offers no authority for the argument. This Court has recognized the possibility that certain kinds of governmental misconduct may be asserted in defense to prosecution. *See State v. Copeland,* Me., 391 A.2d 836 (1978). In *Copeland,* the issue was whether the police had unfairly interfered with the defendant's ability to obtain evidence of his innocence, thereby violating his due-process rights. In the present case, the question is not whether the police gathered evidence improperly or interfered with the defendant's obtaining evidence; rather, defendant contends that governmental misconduct should excuse the conduct that constitutes the crime. Such a result is what the law of entrapment is carefully tailored to avoid. The trial justice committed no error in refusing to instruct the jury on the ground of governmental unfair play.

2. *Probable cause.* The defendant argues that Officer Worcester "arrested" Farnsworth, technically speaking, at the moment he walked up to the driver's side of Farnsworth's car and told him he was placing him under arrest for operating under the influence, that Worcester lacked proba-

1. Section 52(4)(B) has since been repealed and replaced by 17–A M.R.S.A. § 36(4)(B) (Supp. 1981). The former section 52(4)(B) provided, in part, as follows:

> 4. A belief that conduct does not legally constitute a crime is an affirmative defense to a prosecution for that crime based upon such conduct if:
>
> * * * * * *
>
> B. The defendant acts in reasonable reliance upon an official statement, afterward determined to be invalid or erroneous, contained in:
>
> * * * * * *
>
> (3) an administrative order or grant of permission; or
>
> (4) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the statute defining the crime....

ble cause to make an arrest at that moment, and that all evidence of intoxication obtained as a result of the arrest, including the blood alcohol test, should have been suppressed as the product of an illegal arrest. The trial court denied defendant's motion to suppress and refused to instruct the jury that if Worcester lacked probable cause to arrest Farnsworth it must return a verdict of not guilty.

█ In the circumstances, it is not necessary for this Court to determine the precise moment at which Farnsworth was effectively arrested for driving under the influence. *Cf. State v. Powers*, Me., 386 A.2d 721 (1978) (time of arrest identified for determining whether defendant's conduct amounted to an attempt to escape from arrest.) Sufficient evidence supports the trial court's conclusion that Worcester had probable cause to believe, at the moment he told Farnsworth he was placing him under arrest, that Farnsworth had committed the offense: Farnsworth had crowded him to the side of the road and had thereafter weaved back and forth across the road several times while being followed for a quarter of a mile. Worcester had known Farnsworth for years and knew of his alcoholic tendencies. Worcester also had a brief opportunity to observe Farnsworth through the open window of his car and notice that his face was red. Worcester had testified that usually when he had seen Farnsworth with a red face Farnsworth had been drinking. The trial justice's finding that the arrest was made with probable cause cannot be found clearly erroneous. *See State v. Parkinson*, Me., 389 A.2d 1, 9, 11 (1978).

█ The trial court did not err in refusing to instruct the jury on probable cause. Whether probable cause exists to support a warrantless search is for the court to decide and is not to be submitted to the jury. *State v. Parkinson*, 389 A.2d at 9.

The entry is:

Judgment affirmed.

All concurring.